PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHRYN O'BRIEN, | ) | |
| | ) | CASE NO.  5:15CV0823 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| PTM CHRISTOPHER McCORD, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 35] |

Plaintiff Kathryn O'Brien ("Plaintiff") brought this civil rights action under 42 U.S.C. §§ 1983 and 1988 against Defendant Patrolman Christopher McCord ("Defendant") of the Alliance, Ohio Police Department alleging that Defendant "maliciously assaulted and battered [her] without legally-adequate provocation or other justification" resulting in an unreasonable seizure that violated her Fourth Amendment rights.  Amended Complaint (ECF No. 3) at PageID #: 10, ¶¶ 4-5.  Defendant denies that claim and asserts qualified immunity.  Answer (ECF No. 5) at PageID #: 15, ¶¶ 1, 2, 4, 11.  This claim is now before the Court upon Defendant's Motion for Summary Judgment (ECF No. 35).  Defendant moves the Court for an Order granting him summary judgment because his alleged conduct during the investigatory traffic stop and Plaintiff's arrest was objectively reasonable, legal conduct shielded by qualified immunity from suit.  The Court has been advised, having reviewed the record (including the CD recording the events from Defendant's cruiser and body recorder (*see* ECF No. 28)), the parties' briefs, and the applicable law.  For the reasons set forth below, the motion is granted.

(5:15CV0823)

# I.  Background

## A.

As a preliminary matter, the Court notes that the Case Management Plan (ECF No. 11),

entered on July 16, 2015, provides, in pertinent part:

> Lead counsel of record shall confer with one another in person in order to prepare
> written stipulations as to all uncontested facts to be presented by the dispositive
> motion.  The stipulations shall be filed with the Court on or before February 1,
> 2016.[1]

ECF No. 11 at PageID #: 49, ¶ 13.  No stipulations were filed.

## B.

On January 16, 2015, Plaintiff was a passenger in a car that went left of center.  Affidavit

of Patrolman Christopher McCord (ECF No. 35-1) at ¶ 4; ECF No. 28.  Defendant witnessed the

traffic law violation, pulled the car over, smelled a strong marijuana odor coming from it, and

told Plaintiff to keep her hands on the dashboard while he dealt with the driver.  Plaintiff began

her obstructive behavior by removing her hands from the dash.  Defendant told her to keep them

there.  She did, but not for long.

Plaintiff admits she and the driver smoked a "blunt" in the car earlier that night, so the

strong marijuana odor was understandable.  Deposition of Kathryn O'Brien (ECF No. 32-1) at

PageID #: 330.  Defendant repeatedly asked Plaintiff to exit the car so he could search it.

Plaintiff stayed put while questioning the exit requests because she wanted to know what she had

done wrong.  Defendant, not wanting to engage in a debate with Plaintiff, did not respond, but

---

[1]  The dispositive motion cutoff was extended until February 8, 2016.  Non-
document Order dated January 29, 2016.

2

(5:15CV0823)

repeated his requests to exit and eventually ordered her out of the car.  Deposition of Patrolman

Christopher McCord (ECF No. 29-1) at PageID #: 240-43.  Defendant testified:

> Q.    You kept ordering her out of the car?
> A.    Correct.
> Q.    In fact, you asked her several times to get out of the car, right?
> A.    I believe it was five times, yes.
> Q.    By what authority did you order her out of the car?
> A.    That I was searching her vehicle. She can't be in the vehicle, while I'm searching it, for my own safety.

ECF No. 29-1 at PageID #: 222.

Eventually, Plaintiff got out standing in the street between the car and the curb.

Defendant then twice directed Plaintiff to the sidewalk away from the car so he could safely

conduct a search.  She again would not budge and continued to question Defendant's authority.

ECF No. 29-1 at PageID #: 228, 230.  Defendant testified:

> Q.    She was still obstructing how?
> A.    She was standing in the doorway when I asked her to move so that I can conduct my search.  We don't normally have people stand over our shoulders when we conduct a search.  I don't like them standing on the side of the road.  I asked her to get up on the sidewalk so she's out of the way, that I don't have to worry about her reaching and grabbing anything. . . .

ECF No. 29-1 at PageID #: 230-31.

Defendant then went to escort Plaintiff to the sidewalk by placing his left hand on her

right upper arm, and she became hysterical – screaming and trying to break free.  Plaintiff went

down to the snow and ice covered ground, and Defendant arrested and handcuffed her.

Defendant testified:

> Q.    You grabbed her didn't you?
> A.    No.

3

(5:15CV0823)

> Q. So you were legally authorized to put your hands on this person, without arresting her, to escort her to the sidewalk?
>
> A. Yes.
>
> Q. And I assume that at that point in time she was not free to tell you to keep your hands to yourself and leave the scene?
>
> A. No.
>
> Q. I think in your report at some point you use the expression she flailed her arms.  Do you remember that?
>
> A. Yes.
>
> Q. "When I attempted to escort her to the sidewalk, she began to flail her arms and scream help."  Is that when she was trying to get away from you, or is that what you characterize as fighting with you?
>
> A. That would be both.
>
> Q. She was fighting with you?
>
> A. Yes.  After the initial flailing and pulling back, yes, I would say that would be fighting.  I am not saying she is standing there fist fighting and boxing me, if that's what's being implied, but she was not complying with me, which would be, by definition, fighting.
>
>                              \*     \*     \*
>
> Q. When she was flailing her arms, it looked to me -- and you are free to disagree -- that she was trying to get away, as opposed to confronting you?
>
> A. Correct.  You can fight and get away.  She was, at that point, what I felt to be a flight risk more than anything else.

ECF No. 29-1 at PageID #: 234-36.  Plaintiff admits she tried to pull away from Defendant, but she says he pushed her to the ground, rather than her slipping on the firmly packed snow and ice.

ECF No. 32-1 at PageID #: 355.  Plaintiff asked to be taken to the hospital.

Defendant found marijuana in the car and in Plaintiff's purse, as well as drug paraphernalia in the driver's backpack during the search of the car.  ECF No. 35-1 at ¶ 5.  Plaintiff was charged with obstructing official business (M2), resisting arrest (M2), drug possession/use (MM), and drug paraphernalia (MM).  She made bail that evening and went home.  *State of Ohio v. O'Brien*, No. 2015 CRB 00067 (Alliance Municipal Court filed Jan. 20, 2015); Alliance Municipal Court Records (ECF No. 35-6).  Plaintiff pled no contest to drug

4

(5:15CV0823)

possession/use and the remaining charges were dismissed.  She stipulated to probable cause for her arrest.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  Rule 56(c) provides as follows:

**(c)**   **Procedures.**

> **(1)**   **Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>> **(A)**   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

5

(5:15CV0823)

> **(B)**    showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an adverse
> party cannot produce admissible evidence to support the
> fact.

An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to [whether] the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of

6

(5:15CV0823)

material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.*

### III.  Analysis

#### A.    Qualified Immunity

Qualified immunity protects government officials from liability "when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights."  *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

It is a pure question of law for the Court to determine whether, viewing the facts in the light most favorable to Plaintiff, Defendant's actions were objectively reasonable under the circumstances.  *See Scott*, 550 U.S. at 381 n. 8.

In *Saucier v. Katz*, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity.  533 U.S. 194, 201 (2001).  The Court must consider (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established.[2]  *Id.*  In

---

[2]  Some panels of the Sixth Circuit have employed a three-step qualified immunity analysis, asking, in addition to the *Katz* questions, "whether the plaintiff offered sufficient

(continued...)

7

(5:15CV0823)

*Pearson v. Callahan*, the Supreme Court held that while the sequence set forth in *Katz* is often

appropriate, it is not mandatory, and courts have discretion to decide which of the two prongs of

the qualified immunity analysis to address first.  555 U.S. 223, 236 (2009).

      Once a defendant raises the qualified immunity defense, the burden is on the plaintiff to

demonstrate that the official is not entitled to qualified immunity by alleging facts sufficient to

show that the official's act violated clearly established law at the time that it was committed.

*Simmonds v. Genesee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012).  "To defeat the qualified

immunity bar, a plaintiff 'must present evidence sufficient to create a genuine issue as to whether

the defendant committed the acts that violated the law.'"  *Id.* (quoting *Adams v. Metiva*, 31 F.3d

375, 386 (6th Cir. 1994)).  "To make out a *genuine* issue of material fact, plaintiff must present

significant probative evidence tending to support her version of the facts, *evidence* on which a

reasonable jury could return a verdict for her."  *Chappell v. City of Cleveland*, 585 F.3d 901, 913

(6th Cir. 2009) (emphasis in original).

### 1.      The Investigatory Traffic Stop and Requests to Exit the Car

      A police officer does not violate the Fourth Amendment by a warrantless seizure of an

individual if the "officer has reasonable suspicion that criminal activity may be afoot."  *United*

*States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008).  The investigatory stop must be

---

    [2](...continued)
evidence to indicate that what the official allegedly did was objectively unreasonable in
light of the clearly established constitutional rights."  *Estate of Carter v. City of Detroit*,
408 F.3d 305, 311 n.2 (6th Cir. 2005) (internal quotation marks omitted).  "[T]he
three-step approach may in some cases increase the clarity of the proper analysis," but
"[i]n many factual contexts . . . , including this one, the fact that a right is 'clearly
established' sufficiently implies that its violation is objectively unreasonable."  *Id.*

(5:15CV0823)

reasonably related to the circumstances that warranted the initial stop and last no longer than necessary to carry out the purpose of the stop.  *Id.* at 372 (quoting *United States v. Blair*, 524 F.3d 740, 750 (6th Cir. 2008)).  The officer may conduct a brief investigatory traffic stop and make reasonable inquiries as to his suspicions.  *Id.* at 370.  There must be "specific and articulable facts" to justify the officer's suspicion that the defendant has been or is involved in a crime.  *Terry v. Ohio*, 392 U.S. 1, 21 (1969).  The facts must be assessed based on the totality of the circumstances.  *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).  Reasonable suspicion requires less than probable cause but more than a hunch that there is criminal activity.  *Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012).  Reasonable suspicion of an ongoing misdemeanor[3] is sufficient to conduct an investigatory stop.  *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (noting that "a seizure for an ongoing violation of *any* crime—no matter how minor—is governed by the standard of reasonable suspicion, not probable cause") (emphasis in original).

During an entire, lawful investigatory traffic stop, the officer effectively seizes everyone in the car – the driver and all passengers.  *Brendlin v. California*, 551 U.S. 249, 255 (2007).  Ordering the driver and all passengers to exit does not violate the Fourth Amendment.  *Id.*  As stated by the United States Supreme Court in *Maryland v. Wilson*:

> [D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car.  While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passengers is minimal. We therefore hold that

---

[3]  It is a minor misdemeanor to drive left of the center line.  Ohio Rev. Code § 4511.29.

(5:15CV0823)

> an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.

519 U.S. 408, 414-15 (1997) (footnote omitted).  Thus, Defendant's requests that Plaintiff exit the car were legal.

In addition, Defendant smelled a strong marijuana odor coming from the car, which gave him reasonable suspicion to search it.  Therefore, Defendant had all the more reason to empty the car and clear the scene.  But Plaintiff got in the way, insisting on knowing Defendant's legal authority for ordering her out.  No objectively reasonable officer knowing the law would do anything other than what Defendant did.  His conduct in stopping the car, requesting that Plaintiff exit, and then ordering her to exit, was entirely lawful; and thus, shielded by qualified immunity, for which no explanation from Defendant was needed.

## 2. Plaintiff's § 1983 Excessive Force Police Misconduct Claim

Once Plaintiff finally exited the car, she was twice directed to the sidewalk by Defendant, but continued to obstruct McCord by again wanting an explanation.  Defendant's sidewalk directives were safety-based demands.  Defendant wanted Plaintiff off the street for her safety and away from the car for his own safety.  Police officers are entitled to feel reasonably safe as they do their jobs.  *Id.* at 412.  In the case at bar, Defendant wanted to search the car to conclude his investigation.  The Court concludes that asking Plaintiff to move a few feet away is objectively reasonable and lawful; and thus, the conduct is shielded by qualified immunity.

In determining whether a right is clearly established, courts are to ask if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The Court of

(5:15CV0823)

Appeals for the Sixth Circuit has held that nonviolent and non-resistant arrestees are entitled "to be free from unnecessary pain knowingly inflicted." *Zantello v. Shelby Twp.*, 277 Fed.Appx. 570, 574 (6th Cir. 2008) (quoting *St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005), abrogation on other grounds recognized in *Marvin v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007)); *see also Carpenter v. Bowling*, 276 Fed.Appx. 423, 426-27 (6th Cir. 2008) (citing additional cases).  Such a right existed, at least, as long ago as 2005, and this case arose in 2015. Amended Complaint (ECF No. 3) at ¶ 4.  In fact, Defendant admits that Plaintiff alleges a constitutional violation.  Memorandum in Support (ECF No. 35) at PageID #: 441.  Thus, the law in this Circuit clearly establishes that Plaintiff had a right to be free of unnecessary pain caused by a police officer.

Because the law was clearly established, the constitutional dimensions of unreasonable force must be analyzed in relation to the facts of the case at bar.  A balancing test has been promulgated to determine whether unreasonable force was used:  "the nature and quality of the intrusion on the individual[ ]" is weighed against "the countervailing governmental interests at stake." *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The "underlying intent or motivation of the officer" is not relevant to this analysis, *id.* (citing *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004)), and Defendant's decision to use force is evaluated "from the perspective of an objective officer." *Id.* (citing *Dunagin*, 390 F.3d at 493).  Also, Plaintiff's actions can be assessed when determining reasonableness. *See id.* at 456 (citing *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002); *Adams*, 31 F.3d at 387; *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)).

11

(5:15CV0823)

Plaintiff's refusal to move to the sidewalk inhibited Defendant's investigation.  It is a crime to obstruct official business.  *See* Ohio Rev. Code § 2921.31.  With Plaintiff not obeying verbal commands, Defendant went to physically escort her to the sidewalk – a low-level "force" authorized by standard police procedure.  ECF No. 29-1 at PageID #: 249-50; Alliance Police Department Standards, Operations Policies and Procedures Manual ("Manual") (ECF No. 30-1 at PageID #: 275-311) at PageID #: 301.  No objectively reasonable officer knowing the law would conclude that the escort attempt in the case at bar violated the Fourth Amendment.  Plaintiff's histrionics were break-away, flight actions that could have reasonably led Defendant to take her down.  Assuming he did for purposes of the within motion, Defendant was justified.  Alliance Police Department policy allows an officer to take down a suspect when the threat is to "break away, escape, [or] evade control."  ECF No. 30-1 at PageID #: 301.  Plaintiff was repeatedly screaming "Let go of me.  Help."  She attempted to pull her arms away from Defendant.  Plaintiff admits she tried to spin away and break free.  ECF No. 32-1 at PageID #: 355.[4]  Defendant rapidly and correctly concluded that Plaintiff was trying to break away, escape, and evade control.  He acted according to his training and police procedure if he put her down on the ground.  ECF No. 30-1 at PageID #: 304.

---

[4]  Plaintiff attests that "[a]t no time during her detention and arrest did she resist that arrest or attempt to evade arrest by flight."  Affidavit of Kathryn O'Brien (ECF No. 38) at PageID #: 541, ¶ 6.  Plaintiff cannot create a genuine dispute of fact by filing an affidavit, after Defendant has moved for summary judgment, that contradicts her earlier deposition testimony.  *Penny v. United States Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997).  Moreover, the CD recording the events from Defendant's cruiser and body recorder (*see* ECF No. 28) shows Plaintiff pushing, pulling, and pivoting to get free.

12

(5:15CV0823)

In making the reasonableness determination, the Court looks at "1) the severity of the crime, 2) whether the suspect poses an immediate threat to the safety of the officer or others, and 3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006). These factors are not exhaustive, however, because,

> the ultimate question is "whether the totality of the circumstances justifies a particular sort of seizure." *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham*, 490 U.S. at 396). Furthermore, reasonableness must be judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. *See Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

*Id.*

Taking Plaintiff's version of events to be correct, as the Court must, Plaintiff's seizure was reasonable. Each of the *Graham* factors militates in favor of a finding that her seizure was reasonable as a matter of law. No objectively reasonable police officer knowing the law would question the right to have Plaintiff on the sidewalk, escort her there when she refused, take her down when she tried to break free, and arrest her for obstructing official business and resisting arrest. Thus, Defendant's alleged actions are shielded by qualified immunity.

Pursuant to the Manual, Defendant properly assessed Plaintiff's threat/resistance level as beginning at 1 and rising to 3. Plaintiff was verbally announcing her intent not to comply with lawful orders – level 1. ECF No. 29-1 at PageID #: 249-50; ECF No. 30-1 at PageID #: 301. Initially, Defendant appropriately gave Plaintiff verbal commands and then appropriately used

13

(5:15CV0823)

hands-on physical control (the escort technique) to obtain compliance.  ECF No. 30-1 at PageID #: 302; 304.  Plaintiff then resisted and took action to break away from Defendant – level 3.  ECF No. 30-1 at PageID #: 301.  At this point, Defendant could have used chemical sprays, pain compliance control tactics, or electro-muscular disruption devices.  ECF No. 30-1 at PageID #: 304.  He did not go that far, but merely took her to the ground.  This was less force than he was authorized to use by Alliance Police Department policy and training.  Affidavit of Samuel D. Faulkner (ECF No. 35-7 at PageID #: 513) at ¶ 4; Expert Report (ECF No. 35-7 at PageID #: 521-33) at PageID #: 532.  When Plaintiff went down or while down, her face contacted hard-pack snow and/or ice creating some expected facial abrasions and bruising.  Affidavit of Philip J. Weaver, Jr. (ECF No. 35-4 at PageID #: 477) at ¶ 1.a; Photographs (ECF No. 35-4 at PageID #: 478-80).  Any injury Plaintiff may have suffered on the ice-packed sidewalk during take-down was an unavoidable consequence of Defendant's appropriate response to her threat or resistance level.  She brought this on herself.

Plaintiff also contends the handcuffs caused her bruises and abrasions.  ECF No. 35-4 at PageID #: 477 at ¶ 1.b; Photographs (ECF No. 35-4 at PageID #: 481-84).  Yet she brought that on herself too, by moving and twisting her wrists while she was cuffed.  Defendant warned her to stop for her own comfort.  ECF No. 35-1 at ¶ 8.  Plaintiff has such small wrists that the handcuffs even fully closed still left her room to move.  ECF No. 35-1) at ¶ 7; Affidavit of Tye R. Lauener (ECF No. 35-5) at ¶ 3. Handcuffing Plaintiff upon arrest was reasonable and within Defendant's discretionary authority.  *See Elrich v. Wright*, No. 87-3252, 1987 WL 44485 (6th Cir. Sept. 16, 1987) ("The excessive force complained of by the plaintiffs during the arrest was that the

14

(5:15CV0823)

handcuffs were tight and bruised [one of the plaintiff's] wrists.  The amount of force used was insufficient to rise to a claim under 42 U.S.C. § 1983.").  Pursuant to the Manual, Defendant could have handcuffed Plaintiff sooner when she was a level 1 threat.  ECF No. 29-1 at PageID #: 248-49; ECF No. 30-1 at PageID #: 304.  The fact he waited shows restraint in dealing with an argumentative, obstructive, hysterical suspect.

Each action Defendant took with Plaintiff was reasonable and within his discretionary authority.  He followed the Alliance Police Department's policies and procedures and routine police training throughout the encounter.  As such, he is entitled to qualified immunity against Plaintiff's § 1983 excessive force police misconduct claim.

**B.      Pendant Assault and Battery Claim Under Ohio Law**

Finally, Defendant argues without opposition that he is immune from a state law assault and battery claim under Ohio Rev. Code § 2744.03(A).  The pre-filing written exchange required by the Case Management Plan (ECF No. 11 at PageID #: 49, ¶ 13) should have obviated the need for the Court's attention to be drawn to this unopposed argument.

Because Plaintiff failed to meet her burden in opposing summary judgment on a claim for assault and battery under Ohio law, Plaintiff has abandoned this claim (if it is alleged in the Amended Complaint (ECF No. 3)) and waived any argument concerning dismissal of such claim.  *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in . . . his response to the summary judgment motion"); *see also, e.g.*, *Hadi v. State Farm Ins. Cos.*, 2:07-CV-0060, 2008 WL 4877766, at *13 (S.D. Ohio Nov. 12, 2008)

(5:15CV0823)

(finding plaintiff's failure to respond with any evidence supporting his negligent infliction of emotional distress claim "apparently concedes that summary judgment is proper on this count."). Therefore, Defendant's Motion for Summary Judgment (ECF No. 35) with respect to this claim is granted for the reasons articulated by Defendant.  *See* ECF No. 35 at PageID #: 445-46.

## IV.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact and Defendant is entitled to a judgment as a matter of law.  For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 35) is granted.  Final judgment will be entered in favor of Defendant and against Plaintiff on the Amended Complaint (ECF No. 3).


IT IS SO ORDERED.


  September 30, 2016                        */s/ Benita Y. Pearson*
Date                                          Benita Y. Pearson
                                              United States District Judge

16